IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAYFIELD AVIATION, LLC,            )
                                   )
            Plaintiff,             )
                                   )
       v.                          )     1:11CV274
                                   )
LYON AVIATION, INC.,               )
                                   )
            Defendant.             )

ORDER, MEMORANDUM OPINION, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter came before the Court on July 26, 2012, for a hearing on pending motions. The Court enters this Order and Recommendation to memorialize the Court's rulings on the matters raised during the hearing.

This case involves a breach of contract action asserted by Plaintiff Rayfield Aviation, LLC ("Plaintiff" or "Rayfield") against Defendant Lyon Aviation, Inc. ("Defendant" or "Lyon") arising out of an "Aircraft Lease and Management Services Agreement" (the "Agreement"). Under the Agreement, Rayfield leased its aircraft to Lyon to conduct charter flights. As "rent" under the Agreement, Lyon paid Rayfield the "Charter Revenues" from charter flights arranged by Lyon for various third parties. By the terms of the agreement, the "Charter Revenues" did not include "incidental expenses charged to the charter customers associated with overnights, landing fees, catering, deicing taxes, and similar expenses." A dispute arose with respect to what items were properly included as "incidental expenses" under this provision, particularly related to various items designated by Lyon as "handling fees." Rayfield ultimately terminated the

contract and filed the present suit, asserting two counts. Count One is a claim for "Accounting," requesting a "court-ordered accounting and examination of Lyon's books and records relating to the Agreement, and in particular regarding the 'handling fees' deducted and retained by Lyon." Count Two is a claim for Breach of Contract, contending that Lyon breached the agreement by retaining the "handling fees."

A.  Discovery Motions.

    1.  Defendant Lyon's Motion to Compel [Doc. #20].

Discovery in this case has already closed, but prior to the close of discovery, the parties filed several discovery-related motions that came before the Court at the July 26, 2012 hearing. First, Defendant Lyon filed a Motion to Compel Discovery [Doc. #20], asking the Court to compel Plaintiff to respond fully to Lyon's First Set of Interrogatories and First Set of Requests for Production of Documents. This Motion to Compel originated as a result of Plaintiffs' prior counsel's failure to fully provide documents as required and failure to fulfill their discovery obligations under the Federal Rules of Civil Procedure. However, the documents were subsequently provided, albeit late, and at the hearing, Plaintiff's current counsel represented that all documents had been provided, with two exceptions as to which a discovery dispute remains. Those two areas relate to: (1) Document Requests 19 and 22, related to contract management service agreements between Rayfield and other third parties; and (2) Document Requests 25 and 26, seeking Rayfield's financing and revenue information. Plaintiff's current counsel also agreed to obtain any documents in the possession of Plaintiff's former counsel in this case, as well as Plaintiff's counsel involved in the negotiation and drafting of the Agreement, and then to either

produce those documents or include them in his own privilege log provided to Lyon. Based on these representations by Plaintiff's counsel, the Court finds that the Motion to Compel is moot with respect to all of the items raised, other than these two areas of dispute.

As to the first area of dispute, that is, Document Requests 19 and 22, related to contract management service agreements between Rayfield and other third parties, Plaintiff's counsel agreed that the matters raised in Requests 19 and 22 were potentially relevant and discoverable if the Court determined that the parties' Agreement was "ambiguous." However, Plaintiff argued that the Agreement was "clear and unambiguous" and that any other matters related to interpretation of the Agreement were irrelevant. However, on this issue, the Court has reviewed the Agreement and concludes that at least for purposes of discovery, the potential ambiguity of the contract is at issue, and therefore matters outside the "four corners" of the Agreement itself are relevant.[1] See Fed. R. Civ. P. 26(b)(1) (setting broad scope of discovery); Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (noting that "relevancy" under Rule 26(b) is broadly construed). Therefore, the Motion to Compel will be granted as to Document Requests 19 and 22.

However, as to the remaining area of dispute, that is, Document Requests 25 and 26, those Requests seek financial information from Plaintiff not tied to the Agreement between the parties. Specifically, Request 25 seeks financing or refinancing information for the aircraft, and

---

[1] At the hearing, the Court further noted that the Agreement appeared to be ambiguous in at least some respects. Specifically, the definition of "Charter Revenues" appears to be open to multiple reasonable interpretations, and even more pointedly, the determination of what expenses are within the phrase "similar expenses" is a matter that would appear to be open to interpretation. However, the Court notes that for present purposes, the issue of ambiguity has at least been raised and discovery related to that issue is relevant.

Request 26 seeks "all documents" related to Plaintiff's "revenue generated, costs incurred or profits generated for operation of aircraft." Defendant contends that this information is relevant to "motive," because the information could show that Plaintiff was having financial difficulties that motivated them to bring what Defendant contends is a "frivolous" lawsuit. However, the Court concludes that the "motive" for the suit is not relevant to the actual breach of contract claims raised in this case. Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 414 (M.D.N.C. 1992) (noting that it is well-established that in ordinary litigation the plaintiff's motive in bringing suit is not relevant to the subject matter of the suit and is not a matter for discovery); Digital Equip. Corp. v. Sys. Indus. Inc., 108 F.R.D. 742, 743 (D. Mass. 1986) (denying discovery into plaintiff's motive in bringing suit). Moreover, even if the listed items had some relevance to the claims, the relevance is marginal, and would not justify the burden on Plaintiff of producing financial information outside the scope of the Agreement. Therefore, the Court will deny the Motion to Compel as to Document Requests 25 and 26.

    2.      Plaintiff Rayfield's Motion to Compel [Doc. #40].

Plaintiff Rayfield also filed a Motion to Compel [Doc. #40], seeking to compel responses to Plaintiff's First and Second Sets of Requests for Production of Documents. At the hearing on July 26, counsel for Lyon represented that all of the charter customer invoices had been provided to Plaintiff as requested, that those charter customer invoices were the actual invoices sent to and paid by the charter customers, and that there were no other "follow-up" invoices or any other undisclosed charter customer invoices. Many of the Requests were moot in light of this representation, and the parties identified the following four remaining areas of dispute: (1)

4

Lyon provided documentation regarding expenses it considered to be "handling fees," but had not provided underlying documentation for other expenses or items listed on the invoices; (2) although Lyon had produced the charter customer invoices, the names of the charter customers were redacted; (3) Lyon objected to First Request No. 16, seeking "all documents related to the revenue generated, costs incurred, or profits generated through Your management of the Aircraft for all relevant years"; and (4) Lyon objected to Second Request No. 3, seeking "copies of Lyon's bank records for any bank account of Lyon's that received deposits or wire transfers from brokers, customers, or other person or entity for any and all activity relating to use of the Aircraft during the contract term." Because all remaining matters were resolved by information provided and representations made during the hearing, the Motion to Compel is moot other than as to these four areas of dispute.

As to the first area of dispute, that is, that Lyon provided documentation regarding expenses it considered to be "handling fees," but had not provided underlying documentation for other expenses or items listed on the invoices, Rayfield argued that it was impossible to "audit" the charter customer invoices or to otherwise determine how various expenses were handled without all of the underlying documentation. For its part, Lyon argued that only the documentation for the "handling fees" was relevant because that was the specific issue raised in the breach of contract claim. In considering these contentions, the Court is reluctant to require additional discovery when Plaintiff did specifically focus its Complaint on "handling fees." However, in reviewing the information presented thus far, the Court agrees that it may be difficult to ultimately resolve the breach of contract claims in this case without considering

5

all of the various line items raised in the invoices. For example, some "landing fees" are listed as separate line items in the invoices, while other "landing fees" are included by Lyon in the umbrella of "handling fees." At the hearing, counsel for Lyon proffered that the landing fees were treated differently on domestic versus international flights. While this may be true, ultimately this inquiry does raise issues that are relevant to the underlying breach of contract claim, and the Court is particularly concerned that this case not proceed to trial with substantial portions of the relevant records still not produced. Under Rule 26, discovery is appropriate on matters relevant to the claims and defenses, and the Court for good cause can allow discovery that is relevant to the subject matter of the dispute. See Fed. R. Civ. P. 26(c) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In the present case, the Court finds that there is good cause under Rule 26 to allow discovery on matters relevant to the subject matter of this dispute, including documents related to the various fees listed on the charter customer invoices, so that the various expenses, however designated by Lyon, can be reconciled and the actual substance of the breach of contract claim can be resolved at trial with the benefit of adequate discovery. Therefore, the Motion to Compel will be granted to the extent that Lyon must provide documentation not only as to items it

6

designated as "handling fees," but also as to other items listed in the charter customer invoices, all of which relate to the parties' dispute under the Agreement.

With respect to the second area of dispute, that is, the redaction of the charter customers' names and addresses, the Court will not require Lyon to produce unredacted versions of the invoices to reveal the charter customer names and addresses. Throughout the term of the Agreement, the invoices were provided to Rayfield with the names and addresses redacted, based on confidentiality agreements and concerns between Lyon and the charter customers. The charter customer invoices are designated by identifying flight information, and the corresponding expenses and third-party invoices have also been designated by the identifying flight information. Therefore, the specific identity of the charter customers is not necessary or even relevant as to the underlying dispute. Moreover, even if the charter customers' identities were relevant, Lyon has raised not only privacy concerns, but also significant competitive concerns regarding releasing this information to Rayfield, as Rayfield has now undertaken a charter flight business in competition with Lyon. Therefore, the Court finds good cause to allow Lyon to limit disclosure of the redacted client identification information. Lyon has offered to make the unredacted invoices available on an "attorneys-eyes-only" basis under the parties' stipulated confidentiality agreement, and the Court will not compel any further disclosure of the redacted information.

With respect to the third area of dispute, that is, First Request No. 16, seeking "all documents related to the revenue generated, costs incurred, or profits generated through Your management of the Aircraft for all relevant years," Defendant's counsel stipulated that he could

7

provide transaction summaries reflecting revenue generated, costs incurred, or profits generated through operation of the Aircraft. To the extent that the requested information may be relevant to this dispute, the Court concludes that the transaction summaries offered by Defendant will be sufficient, particularly in light of the other information required by the Court with respect to all documents related to the charter customer invoices as noted above. The Court further concludes that any greater production as to First Request No. 16 would necessarily involve the production of documents related to other businesses that Lyon was engaged in, and these documents would be only marginally relevant if relevant at all, and production of these documents would impose an undue burden on Defendant.

Finally, with respect to the fourth area of dispute, that is Second Request No. 3, seeking "copies of Lyon's bank records for any bank account of Lyon's that received deposits or wire transfers from brokers, customers, or other person or entity for any and all activity relating to use of the Aircraft during the contract term," Lyon has produced bank records showing deposits from the charter customers into Lyon's bank account, with a corresponding reference to the charter customer invoices for those amounts. The records redact other information that is not relevant to the present dispute. The Court concludes that Lyon's full, unredacted bank records, which would include business beyond the Agreement and beyond Rayfield, would not be relevant, and would include confidential business information that would put Lyon at a competitive disadvantage if it is required to be turned over to Rayfield.

3.     Motion for Leave to Depose [Doc. #45].

Defendant has also filed a Motion for Leave to Depose [Doc. #45], seeking leave to depose Nigel England. Defendant notes that it was unable to depose Mr. England prior to the close of discovery, but that it otherwise still has an additional deposition remaining under the original discovery plan. Having considered this matter, the Court notes that such a request would ordinarily be denied unless the discovery period were extended by Court Order. However, in the present case, the Court has determined that additional discovery must be produced as noted above. In order to facilitate the production of that additional information, the Court will set this matter for a Supplemental Pretrial Conference on August 23, 2012, so that any necessary details regarding the timing and scope of discovery can be addressed. Because discovery will necessarily be re-opened to accommodate this production and any necessary corresponding discovery, the Court will grant Defendant's Motion for Leave to Depose, and will allow Defendant to depose Mr. England. In turn, Plaintiff may also depose one additional witness if it chooses to do so under the prior discovery plan. Any additional discovery issues should be addressed by the parties as part of the Individual or Joint Rule 26(f) Reports submitted prior to the August 23, 2012, conference.

B.     <u>Motion for Sanctions for Spoliation [Doc. #53]</u>.

In addition to these discovery disputes, the Court also heard other pending motions at the July 26 hearing, including Defendant's Motion for Sanctions for Spoliation [Doc. #53]. In that Motion, Defendant seeks dismissal of this case as a sanction against Plaintiff for destruction of computers that may have contained relevant documents. Specifically, Defendant contends

9

that prior to the initiation of this litigation, but at a time when litigation was reasonably foreseeable, Plaintiff closed a small office in Chapel Hill and failed to retain the computers that were used there, even though those computers would have contained e-mails and documents regarding the negotiation, formation, and performance of the Agreement. In addition, Defendant contends that after the suit was filed, Plaintiff's Vice President, Mr. Townsend, replaced his home computer and only selectively saved a few relevant documents or e-mails to his new computer. Defendant notes that Mr. Townsend then disposed of the old computer, such that no attempt can now be made to obtain any of the other documents that may have been stored there. In response, Plaintiff concedes that the destruction occurred, but contends that the destruction was not in bad faith and that Defendant has not been prejudiced in their ability to defend the case because copies of the documents from the Chapel Hill computers were printed and were in storage and have been provided, and because Defendant has its own copies of all of the e-mail exchanges between the parties, which Plaintiff stipulates are authentic.

The Court of Appeals for the Fourth Circuit has noted that "[s]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. . . . The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth. . . . We have recognized that when imposing spoliation sanctions, 'the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.' Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th

Cir.1995). But dismissal should be avoided if a lesser sanction will perform the necessary function. . . . At bottom, to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri v. General Motors Corp., 271 F.3d 583, 590-93 (4th Cir. 2001).

Having considered this Motion for Sanctions in the present case, the Court notes that there are significant concerns in this case regarding Plaintiff's initial failure to place a litigation hold on the documents and computers to prevent this destruction, and in light of Mr. Townsend's selective retention of documents and destruction of his computer after the litigation had commenced. However, based on the information presented at this point, it appears that the destruction of the computers, while at least negligent, was not done in bad faith. Moreover, the destruction of the computers does not deny Lyon the ability to defend this action, given the nature of the dispute and the documents that Defendant itself retained, as well as the documents that Plaintiff has since provided. Finally, the Court finds that in any event, dismissal of Plaintiff's claims is not warranted because lesser sanctions, including potentially an appropriate adverse inference or jury instruction at trial, would be sufficient to address the spoliation here. Therefore, the Court recommends that Defendant's Motion for Sanctions be denied to the extent that Defendant seeks dismissal of this case, but that the dismissal be without prejudice to Defendant requesting an inference or jury instruction at trial based on the alleged spoliation.

Cf. Indura S.A. v. Engineered Controls Int'l Inc., 1:10CV457, 2011 WL 3862083 (M.D.N.C. Sept. 1, 2011) (recommending that the Court "decline to enter judgment" based on alleged destruction or loss of key evidence and "instead, should allow the United States District Judge assigned to the trial of this case to determine whether to give an adverse inference instruction or to allow [the defendant] to solicit testimony from witnesses and to make arguments to the jury about the matter. Such options represent less drastic, alternative responses, sufficient 'both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct'" (citing Silvestri, 271 F.3d at 590)).

C. Motion for Partial Summary Judgment [Doc. #38].

Early in this case, Defendant filed a Motion for Partial Summary Judgment [Doc. #38], seeking dismissal of Count 1 of Plaintiff's Complaint. Count 1 is a claim for "Accounting," while Count 2 is the claim for "Breach of Contract." In the Motion for Partial Summary Judgment, Defendant notes that an "Accounting" is a remedy for an equitable claim, and would not form the basis for a separate claim in this case since no equitable claim has been asserted. In response, Plaintiff agrees that no equitable claim has been asserted, but contends that the claim for "Accounting" is necessary because Defendant has failed to provide sufficient discovery as to the breach of contract claim. Plaintiff further contends that this claim could be construed as a separate breach of contract claim based on other provisions of the Agreement not referenced in the Complaint.

Under North Carolina law "[a]n accounting is an equitable remedy sometimes pled in claims of breach of fiduciary duty." Burgess v. Burgess, 205 N.C. App. 325, 333, 698 S.E.2d

12

666, 672 (N.C. Ct. App. 2010) ("An accounting is '[a] rendition of an account, either voluntarily or by court order. The term frequently refers to the report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries or the probate court.' Black's Law Dictionary 22 (9th ed. 2009)."). "The remedy of an equitable accounting may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." Market Choice, Inc. v. New England Coffee Co., 5:08CV90, 2009 WL 2590651 (W.D.N.C. Aug. 18, 2009). However, where the plaintiff "essentially asserts that an accounting is necessary to determine any additional [amounts] due under the Contract," the plaintiff "has an adequate remedy under the Federal Rules of Civil Procedure for discovery of information relevant to its breach of contract claim." Id. "The hallmark rule of equity is that it will not apply in any case where the party seeking it has a full and complete remedy at law." Id. (quoting Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (N.C. Ct. App. 1996)).

In the present case, Plaintiff concedes that no equitable claim has been asserted, only a breach of contract claim. In addition, the Court has determined that Plaintiff may obtain discovery relevant to that claim under the Federal Rules of Civil Procedure, including all of the documentation underlying the charter customer invoices as discussed above. Thus, Plaintiff has exercised its options under the Federal Rules of Civil Procedure and has obtained the requested discovery relevant to the breach of contract claim. Plaintiff has not asserted an equitable claim and there is no basis for the separate claim for "Accounting" set out as Count 1. Moreover, to

13

the extent that Plaintiff may now be attempting to assert a new breach of contract claim based on separate contractual provisions, the Court concludes that a response to a motion for summary judgment is not an appropriate mechanism for adding those new claims. Therefore, the Court recommends that Defendant's Motion for Partial Summary Judgment be granted, and that Count 1 for an "Accounting" be dismissed to the extent it is set out as a separate claim.

However, to the extent that Defendant also seeks Rule 11 sanctions based Plaintiff's failure to voluntarily dismiss Count 1, the Court notes that Defendant did not follow the "safe harbor" provisions set out in Rule 11. In addition, the Court notes that the determination that Plaintiff has an adequate remedy under the Federal Rules of Civil Procedure to obtain discovery with respect to the breach of contract claim is based in large part on the determination set out above requiring Defendant to produce additional information relevant to the breach of contract claim. The Court therefore recommends that the request for Rule 11 sanctions be denied.

D.   Plaintiff's Motion to Exclude Expert Report [Doc. #78].

Plaintiff also filed a Motion to Exclude [Doc. #78] seeking to exclude the expert report and testimony of Frank W. Milian. Plaintiff contends that Mr. Milian's report should be excluded because his testimony is not helpful or needed in order to construe the contract, his report attempts to vary or contradict unambiguous provisions of the contract, and his opinions include legal conclusions that are not the proper subject of expert testimony.

In considering this Motion at the hearing on July 26, the Court noted that some of the information included in Mr. Milian's expert report appeared to be legal conclusions that would be outside the proper scope of expert testimony. However, the report includes other

14

information as well, particularly as to industry practice and custom and the nature of charter aviation. At this point, it appears that if the Agreement is determined to be ambiguous and the matter proceeds to trial, at least some of Mr. Milian's proposed testimony would potentially be relevant and helpful. To the extent that Plaintiff seeks to challenge Mr. Milian's conclusions on the various bases noted above, and as further set out in the Motion to Exclude, the Court concludes that those challenges could appropriately be considered at trial in determining the scope of any testimony that Mr. Milian would be allowed to provide and the weight to give that testimony, but there is no basis to strike the report in its entirety or preclude Mr. Milian from testifying outright. Therefore, the Court recommends that the Motion to Exclude Expert Report and Testimony of Frank W. Milian be denied, without prejudice to Plaintiff moving at trial or by Motion in Limine to exclude portions of the report or testimony, with any such request considered by the Trial Judge.

E.      Motion for Partial Summary Judgment [Doc. #59] and Motion to Strike [Doc. #63].

In addition, Plaintiff has filed a Motion for Partial Summary Judgment in its favor as to the breach of contract claim in Count 2. Defendant filed a Motion to Strike [Doc. #63] seeking to strike Plaintiff's Motion because Plaintiff failed to file a Notice of Intent to File Dispositive Motion as required by the Local Rules. However, as discussed above, discovery is being reopened as set out herein, and the parties will have an opportunity to file dispositive motions after the close of the reopened discovery period. Therefore, the Court allowed Plaintiff to withdraw the Motion for Partial Summary Judgment without prejudice to refiling it after the close of all discovery. In light of that withdrawal, the Motion to Strike is moot.

15

F.  Requests for Sanctions.

Finally, the Court notes that Defendant has requested monetary sanctions against Plaintiff in connection with its discovery-related motions, based on Plaintiff's failure to reasonably search for documents and failure to produce documents as required by the Federal Rules of Civil Procedure. With respect to an award of fees or expenses in connection with discovery-related motions, under Federal Rule of Civil Procedure 37(a)(5)(C), if a motion to compel is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." In the present case, as noted by the Court above, each party's motion to compel was determined to be moot in part and was granted in part and denied in part. In the circumstances, and as discussed at the hearing on July 26, the Court concluded that no further apportionment or award of fees was required.

However, at the July 26 hearing, the Court took under advisement Defendant's request for sanctions for its costs and expenses incurred as a result of Plaintiff's prior counsel's failure to produce documents in a timely manner. In considering this issue, the Court is indeed troubled by the apparently complete failure of Plaintiff's former counsel to search for and produce relevant documents, and failure to impose even a basic litigation hold to prevent the destruction of the computers that occurred here. As discussed above, Defendant may be entitled at trial to an inference or jury instruction as a sanction for Plaintiff's failures. To the extent the Defendant also seeks attorney's fees or other expenses incurred as a result of Plaintiff's failures, the Court concludes that this request is a matter best considered after trial as

16

part of any final damages determination in this case. In this regard, the Court notes that the parties' Agreement at Section 16.5 provides that "[i]n the even a dispute arises regarding this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs, in addition to other relief to which it is entitled." Both parties have asserted a right to such fees and costs, and any post-trial determination of damages or costs will necessarily involve a consideration of attorney's fees incurred. Therefore, to the extent Defendant presently seeks attorney's fees and costs as a sanction due to Plaintiff's discovery delays in this case, the Court concludes that those items can be raised for consideration after trial in determining the appropriate allocation of any attorney's fees and costs. However, because the failures involved conduct by Plaintiff's prior counsel, who are not presently before the Court, and because other sanctions can be considered as noted herein to reduce the potential prejudice to Defendant, the Court will not impose any additional award of costs or attorney's fees at this time.

G.     Conclusion.

For the reasons set out above and as set out during the hearing on July 26, 2012,

IT IS ORDERED that Defendant's Motion to Compel [Doc. #20] is in large part moot, and as to the remaining matters in dispute, the Motion is GRANTED IN PART AND DENIED IN PART as set out above.

IT IS LIKEWISE ORDERED that Plaintiff's Motion to Compel [Doc. #40] is in large part moot, and as to the remaining matters in dispute, the Motion is GRANTED IN PART AND DENIED IN PART as set out above.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Depose [Doc. #45] is GRANTED, and Defendant may depose Mr. England. In turn, Plaintiff may also depose one additional witness if it chooses to do so under the original discovery plan.

IT IS FURTHER ORDERED that this matter is SET for a Supplemental Pretrial Conference on August 23, 2012, so that any necessary details regarding the timing and scope of the additional discovery can be addressed.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment [Doc. #59] is WITHDRAWN, and the Motion to Strike [Doc. #63] is MOOT.

IT IS FURTHER ORDERED that no award of fees and expenses will be made under Rule 37(a)(5) in the circumstances and in light of the resolution of the various motions herein, but to the extent Defendant seeks attorney's fees and costs as a sanction due to Plaintiff's discovery delays and failures in this case, the Court concludes that those items can be raised for consideration after trial in determining the appropriate allocation of any attorney's fees and costs.

IT IS RECOMMENDED that Defendant's Motion for Sanctions for Spoliation [Doc. #53] be DENIED to the extent that Defendant seeks dismissal of this case, but that the dismissal be without prejudice to Defendant requesting an inference or jury instruction at trial based on the alleged spoliation.

IT ISFURTHER RECOMMENDED that Defendant's Motion for Partial Summary Judgment [Doc. #38] be GRANTED, and that Count 1 for an "Accounting" be DISMISSED

18

Case 1:11-cv-00274-TDS-JEP   Document 89   Filed 07/30/12   Page 18 of 19

to the extent it is set out as a separate claim, but that Defendant's request for Rule 11 sanctions be DENIED.

IT IS FURTHER RECOMMENDED that the Motion to Exclude Expert Report and Testimony of Frank W. Milian [Doc. #78] be DENIED, without prejudice to Plaintiff moving at trial or by Motion in Limine to exclude portions of the report or testimony, with any such request considered by the Trial Judge.

This, the 30th day of July, 2012.

                                              /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge